UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ANDREW HARDY-GRAHAM,

         Plaintiff,

      -against-

SOUTHAMPTON JUSTICE COURT,
SOUTHAMPTON TOWN POLICE DEPT.,
JANE DOE, EILEEN POWERS, JOHN
DOE 2, KEITH LAWSTON, BARBARA
WILSON, JOHN DOE,

         Defendants.
----------------------------------X

MEMORANDUM AND ORDER
20-CV-0981(JS)(SIL)

APPEARANCES
For Plaintiff:    Andrew Hardy-Graham
              836 Davis Avenue
              Uniondale, New York 11553

For Defendants:   No appearances.

SEYBERT, District Judge:

      Before the Court is the Second Amended Complaint (ECF No. 9; hereafter, the "SAC")) filed in forma pauperis by pro se plaintiff Andrew Hardy-Graham ("Plaintiff") purporting to allege civil rights violations pursuant to 42 U.S.C. § 1983 ("Section 1983") against the Southampton Justice Court (the "SJ Court"), the Southampton Town Police Department (the "Police Department"), Eileen Powers, Esq. ("Powers"), Keith Lawston ("Officer Lawston"), Barbara Wilson ("Justice Wilson"), and three unidentified individuals who are alleged to be "police or court officers" ("John Doe 1", "John Doe 2", "Jane Doe", and collectively, "Defendants"). Upon review of the SAC in accordance with the in forma pauperis

statute, 28 U.S.C. § 1915, the Court finds that Plaintiff has failed to allege a plausible claim for relief as against the SJ Court, the Police Department, Justice Wilson, Powers, and Jane Doe. Accordingly, the SAC is DISMISSED as against these Defendants pursuant to 28 U.S.C. § 1915(e)(2)(B). Though attenuated, Plaintiff's remaining excessive force claims against Lawston and John Does 1 and 2 shall proceed and the Court ORDERS service of the Summonses and the SAC by the United States Marshals Service (USMS) as set forth herein.

<u>BACKGROUND</u>

By Memorandum and Order dated May 15, 2020, the Court granted Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and dismissed Plaintiff's Amended Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and Federal Rule of Civil Procedure 8. (<u>See</u> Memo & Order, ECF No. 8.) Plaintiff was granted leave to file a SAC within thirty (30) days and, on June 15, 2020, Plaintiff timely did so. (<u>See</u> SAC, ECF No. 9.) Because Plaintiff largely complained of events alleged to have occurred in 2014, the Court ordered Plaintiff to show cause (hereafter, "OSC") why his claims arising from events alleged to have occurred during February 2014 are not barred by the applicable statute of limitations. (<u>See</u> OSC, ECF No. 10.) On September 21, 2020, Plaintiff filed an

2

unsigned response to the OSC that barely addressed the timeliness of his claims.  (See Response, ECF No. 11.)  Rather, Plaintiff largely argued the merits of his claims.  (See id.)

In an abundance of caution and in light of Plaintiff's pro se status, the Court issued another Order to Show Cause whereby Plaintiff was "afforded a final opportunity to properly respond . . . in writing, by October 30, 2020, why his Section 1983 claims are not barred by the applicable three-year statute of limitations."  (Sept. 25, 2020 Elec. Order to Show Cause; hereafter, "Electronic OSC".)  Plaintiff's response to the Electronic OSC was dated October 29, 2021 and was received by the Court on November 2, 2020; it has been accepted for filing.  (See Reply, ECF No. 12.)

The Court finds that, at this early stage in the proceedings and though barely, Plaintiff has demonstrated that he acted with reasonable diligence during the time period he seeks to be tolled and that his circumstances are so extraordinary that the equitable tolling doctrine should apply.  See Zerilli-Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003) (internal citations and quotation marks omitted).  Specifically, Plaintiff reports that his untimely filing was a result of the conditions of his confinement at the Suffolk County Correctional

Facility, as well as his homelessness, addiction, and recovery efforts.  (See Reply, generally, and at 2-3.)  Plaintiff describes that corrections officers "did not allow complaints and used fear to keep inmates from trying to complain."  (Id. at 3.)  He also explains that his "appeal paperwork was damaged in Suffolk County jail transfers and cell tossing."  (Id.)  Further, Plaintiff states that he was homeless after his release from incarceration and he "prioritized survival over recovering what was lost.  I lost personal items and release paperwork."  (Id.)  According to Plaintiff, once he "recovered some stability" in his sobriety and the necessities of living, he focused on his claims.  (Id. at 5.) Thus, the Court finds that Plaintiff's response to the Electronic OSC sufficiently demonstrates a basis for equitable tolling of the statute of limitations.[1]  Accordingly, the Court next considers the merits of Plaintiff's claims in accordance with the screening provision of 28 U.S.C. § 1915(e)(2)(B).

<u>THE SECOND AMENDED COMPLAINT</u>

Plaintiff's claims are brought pursuant to 42 U.S.C. § 1983 to redress the alleged deprivation of his Sixth, Eighth, and

---

[1] However, this finding is without prejudice to the further adjudication of the timeliness of Plaintiff's claims should the Defendants raise the statute of limitations as an affirmative defense.

Fourteenth Amendment rights, as well as several sections under Title 18 of the United States Code, specifically 18 U.S.C. §§ 1510, 1512, and 1519.  (SAC, ¶ II.A.[2])

        According to his SAC, in February 2014, Plaintiff was arrested after breaking the windshield of his then-girlfriend's car.  (SAC at 6.)  Plaintiff was "detained and held overnight" by the Police Department.  (Id.)  Plaintiff was then taken by Southampton Town police to the SJ Court for arraignment on criminal mischief charges.  (See id.)  He describes respectfully "request[ing] to use the bathroom multiple times" to Jane Doe and to Officer Lawston.  (Id.)  Jane Doe allegedly advised Plaintiff that he could not use the restroom if he was next to be called for Court and Officer Lawston just questioned why Plaintiff did not go before leaving his cell for Court.  (See id. at 6-7.)  Plaintiff alleges that he had consumed "two oranges juices" necessitating his need to use the restroom.  (Id.)  He claims hearing a toilet flush and again asking Officer Lawston to use the bathroom since it was "right there."  (Id. at 7.)  Plaintiff contends that while Officer Lawston told him to go, when he attempted to do so, Officer Lawston "pulled" Plaintiff and physically kept Plaintiff from

---

[2] Plaintiff also lists 28 U.S.C §§ 455, 1332, 1343, 1361, and 1491; "C.P.L.P 213", "Prisoner Reform Laws", and "466 U.S. 668."

using the restroom.  (Id.)

According to Plaintiff, he then "jump[ed] on top of the seating arrangement . . . protesting . . . [that he] will not sit until he goes to the bathroom or until Defendant Keith Lawston attempts to trip (Pl[aintiff]) from 3 feet above ground where (Pl[aintiff]) protested."  (Id.)  Plaintiff describes that he "gave up the protest but did not sit" and instead "lung[ed] for the bathroom" when Officer Lawston "put[] an elbow to [Plaintiff's] throat."  (Id.)  Officer Lawston allegedly "trips both parties" and "propel[led] [Plaintiff] towards the exit, not the restroom." (Id.)

Plaintiff asserts that John Doe entered and, after consultation with Officer Lawston, accused Plaintiff of "multiple charges" including attempted escape and assaulting an officer. (Id.)  Plaintiff also claims that John Doe "ignored" his request to use the restroom and, instead, restrained Plaintiff.  (Id. at 7-8.)  Plaintiff contends that, thereafter, he was placed face-down on the floor, with an unknown officer twisting Plaintiff's arm until it hurt and digging his knee into Plaintiff's back. (See id. at 8.)  Plaintiff alleges that Jane Doe then pointed a taser at him and threatened to taser him because he was yelling and kicking.  (See id.)

Plaintiff was then taken back to the Police Department where he was placed on suicide watch after Plaintiff said "I should kill myself." (Id.) Claiming to have used that phrase as a "figure of speech", Plaintiff further contends he has never been suicidal or violent. (Id.) The following day, Plaintiff was returned to the SJ Court for arraignment where he again requested to use the bathroom. (See id.) Plaintiff claims that he "possibl[y] [has a] small bladder" and his request was ignored by John Doe 2. (See id.) When Jane Doe called Plaintiff's name, Plaintiff requested to use the bathroom, to which Jane Doe acquiesced and for which Plaintiff was grateful and relieved. (See id.)

Next, Plaintiff complains about his court-appointed attorney, Powers, claiming she called him an "asshole" and has a reputation, as reported in the newspapers, for representing "a rape/murder[er] Mexican." (Id. at 8-9.) Therefore, Plaintiff requested that Powers be relieved from her representation of him. (See id.) Justice Wilson did not permit Powers to be relieved; thus, Plaintiff asserts that Powers defended him without his consent. (See id. at 8-9.)

Finally, Plaintiff alleges that the "Suffolk County Jail does not allow timely visits to the law library", "has no grievance

policy", and "flipped cells destroying important documents, tainting pro se efforts." (Id. at 9.)

As a result of the foregoing, Plaintiff claims to have suffered "monetary and mental damages" for which he seeks to recover a damages award in the total sum of $1 million. (SAC, ¶II.B(3), ¶IV.)

DISCUSSION

## Application of 28 U.S.C. § 1915

Section 1915 of Title 28 requires a district court to dismiss an in forma pauperis complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).  Courts are obliged to construe the pleadings of a pro se plaintiff liberally.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004).  However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (citations omitted).  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011).  While "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

   A.   Claims Brought Pursuant to 18 U.S.C. §§ 1510, 1512, and 1519

      Plaintiff seeks to pursue claims for relief pursuant to three sections of Title 18 of the United States Code, specifically 18 U.S.C. §§ 1510, 1512, and 1519.  (See SAC, ¶II.A.)  However, these sections are criminal statutes that proscribe the obstruction of justice and do not provide for a private right of action.  See Arthur Andersen LLP v. United States, 544 U.S. 696, 703, 125 S. Ct. 2129, 2134 (2005) ("Chapter 73 of Title 18 of the United States Code provides criminal sanctions for those who obstruct justice."); see also LoPorto v. County of Rensselaer, No. 15-CV-0866, 2018 WL 4565768, at *16 (N.D.N.Y. Sept. 24, 2018) ("[T]here is no indication that § 1510 creates an individual right that can be enforced . . . ."); Hilow v. Rome City Sch. Dist., No.

14-CV-288, 2015 WL 893050, at *8 (N.D.N.Y. Mar. 2, 2015) (finding 18 U.S.C. § 1512 does not contain a private right of action); Kalola v. Int'l Bus. Machines Corp., No. 19-CV-9900, 2019 WL 6879307, at *3 (S.D.N.Y. Dec. 16, 2019) ("[N]o private right of action exists under the criminal statutes enumerated above", including 18 U.S.C. § 1519) (citing Bruin v. White, 2019 WL 4889270, at *4 (W.D. Ky. Oct. 3, 2019) (finding no private cause of action under 18 U.S.C. § 1519)). Accordingly, because there is no private right of action under these criminal statutes, these claims are implausible, warranting their DISMISSAL pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

   B.   Claims Brought Pursuant to 28 U.S.C §§ 455, 1332, 1343, 1361, and 1491; "C.P.L.P 213", "Prisoner Reform Laws", and "466 U.S. 668"[3]

   Plaintiff's claims brought pursuant to 28 U.S.C. §§ 455, 1332, 1343, 1361, and 1491 fare no better. Each of these statutes govern procedure in the federal district courts and none of them provide a separate claim for relief. Section 455 of Title 28 of

---

[3] Insofar as Plaintiff also includes "C.P.L.P. 213", "Prisoner Reform Laws", and "466 U.S. 668", none of these cites provide a cause of action or claim for relief. It appears that Plaintiff intended to cite to N.Y. C.P.L.R. § 213 in support of his mistaken belief that the statute of limitations applicable to his claims is six years. Additionally, Plaintiff's vague reference to unidentified "Prison Reform Laws" and his citation to Strickland v. Washington, 466 U.S. 668 (1984), do not provide independent causes of action.

the United States Code governs the disqualification of a federal justice, judge, or magistrate judge "in any proceeding in which his impartiality might reasonably be question."   28 U.S.C. § 455(a).   Section 1332 of Title 28 of the United States Code governs the jurisdiction of the federal district courts and requires that the parties be of diverse citizenship and that the amount in controversy exceeds the sum or value of $75,000.   See 28 U.S.C. § 1332(a)(1).   Section 1343 of Title 28 of the United States Code provides that federal "district courts shall have original jurisdiction" over civil rights claims, including the right to vote.   See 28 U.S.C. § 1343(a).   Section 1361 of Title 28 of the United States Code provides that the federal "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."   Finally, Section 1491 of Title 28 of the United States Code, known as the Tucker Act, provides "a limited waiver of sovereign immunity and establish[es] federal jurisdiction over certain non-tort claims against the United States."   Odonoghue v. U.S. Dep't of the Army, No. 12-CV-4959, 2012 WL 5505921, at *1 (E.D.N.Y. Nov. 13, 2012).

Because each of these statutes are procedural in nature, and do not provide a substantive cause of action or a right to relief, Plaintiff's damages claims arising from these statutes are

implausible, warranting their DISMISSAL pursuant to 28 U.S.C. §
1915(e)(2)(B)(i)-(ii).

C.  Claims Brought Pursuant to Section 1983

Section 1983 provides:

> [e]very person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> . . . subjects, or causes to be subjected, any citizen
> of the United States . . . to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured . . . .

42 U.S.C. § 1983; accord Rehberg v. Paulk, 566 U.S. 356, 361, 132
S. Ct. 1497, 1501 (2012).  To state a claim under Section 1983, a
plaintiff must "allege that (1) the challenged conduct was
attributable at least in part to a person who was acting under
color of state law and (2) the conduct deprived the plaintiff of
a right guaranteed under the Constitution of the United States."
Rodriguez v. Shoprite Supermarket, No. 19-CV-6565, 2020 WL
1875291, at *2 (E.D.N.Y. Apr. 15, 2020) (internal quotation marks
and citation omitted); see also Rae v. County of Suffolk, 693 F.
Supp. 2d 217, 223 (E.D.N.Y. 2010)(same)(quoting Snider v. Dylag,
188 F.3d 51, 53 (2d Cir. 1999)).

1. Claims Against the SJ Court

To the extent that Plaintiff seeks to impose Section
1983 liability on the SJ Court, such claims are implausible.
First, it is well-established that a Section 1983 action may only

12

be maintained against a "person" who has deprived another of rights under the "Constitution and Laws."  See Dames v. de Blasio, No. 20-CV-0226, 2020 WL 3869724, at *2 (S.D.N.Y. July 8, 2020) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989) (state is not a "person" for the purpose of § 1983 claims)); Zuckerman v. Appellate Div., Second Dep't Supreme Court, 421 F.2d 625, 626 (2d Cir. 1970) (court not a "person" within the meaning of 42 U.S.C. § 1983)).

Second, because the "the Southampton Village Justice Court is part of the New York State Unified Court System", see Davis v. County of Suffolk, No. 18-CV-0303, 2020 WL 7699919, at *12 (E.D.N.Y. Oct. 30, 2020), report and recommendation adopted, 2020 WL 7041082 (E.D.N.Y. Dec. 1, 2020) (citing Ceparano v. Southampton Justice Court, No. 09-CV-0423, 2010 WL 11527157, at *12 (E.D.N.Y. Mar. 22, 2010), report and recommendation adopted, 2010 WL 11527158 (E.D.N.Y. May 12, 2010), aff'd, 404 F. App'x 537 (2d Cir. 2011)), Plaintiff's claims against the SJ Court are barred by the Eleventh Amendment.  It is well-established that "[s]tates and their agencies possess sovereign immunity, as memorialized in the Eleventh Amendment."  Ojeda v. Mendez, No. 20-CV-3910, 2021 WL 66265, at *3 (E.D.N.Y. Jan. 7, 2021) (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984)).  "The Eleventh Amendment bars suits for damages against states and state

agencies absent a state's consent or a valid abrogation of the state's sovereign immunity by an act of Congress." <u>Ojeda</u>, 2021 WL 66265, at *3 (citing <u>Pennhurst</u>, 465 U.S. at 99-100).  Here, Plaintiff has not identified any waiver of sovereign immunity that would permit him to bring suit against the SJ Court, nor could he given that "'New York State has not waived its sovereign immunity from Section 1983 claims, nor did Congress override that immunity by enacting Section 1983.'" <u>Ojeda</u>, 2021 WL 66265, at *3 (quoting <u>Nolan v. Cuomo</u>, No. 11-CV-5827, 2013 WL 168674, at *7 (E.D.N.Y. Jan. 16, 2013) (internal citations omitted)).  Accordingly, as they are barred by the Eleventh Amendment, Plaintiff's Section 1983 claims against the SJ Court are DISMISSED pursuant 28 U.S.C. § 1915(e)(2)(B).

### 2. Claims Against Justice Wilson

Plaintiff also names Justice Wilson as a Defendant. Because Justice Wilson is a state actor sued in her official capacity, Plaintiff's Section 1983 claims for damages against her are likewise barred by the Eleventh Amendment. <u>See</u> <u>supra</u> at 13-14; <u>see also</u> <u>London v. Nassau County Dist. Attorney's Office</u>, No. 20-CV-3988, 2020 WL 7699644, at *7 (E.D.N.Y. Dec. 28, 2020) ("Eleventh Amendment immunity bars Plaintiff's claims for damages against the State of New York and the individual state Defendants in their official capacities).

14

Moreover, Justice Wilson is absolutely immune from suit.

> "It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (citations omitted). This immunity is "from suit, not just from ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991) (citation omitted).

Guarnieri v. Kelley, No. 19-CV-0318, 2019 WL 1486688, at *3 (N.D.N.Y. Apr. 4, 2019), report and recommendation adopted, 2019 WL 5596468 (N.D.N.Y. Oct. 30, 2019), appeal dismissed (Jan. 17, 2020).

In addition, the 1996 Congressional amendments to Section 1983 bar injunctive relief and provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." See Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (1996); see also Montero v. Travis, 171 F.3d 757 (2d Cir. 1999). Therefore, unless a judge has "acted either beyond the judge's judicial capacity, or in the complete absence of all jurisdiction", he or she will be immune from all forms of suit. Guarnieri, 2019 WL 1486688, at *3 (internal quotation marks and citation omitted).

Here, Plaintiff alleges only that Justice Wilson denied his request to have his court-appointed attorney, Powers, relieved from representing him during the preliminary proceedings in the underlying state court criminal case.  (See SAC at 8-9.)  Yet, there can be no dispute that deciding motions during a court proceeding is a purely judicial function.  Further, Plaintiff has not alleged that Justice Wilson acted beyond the scope of her authority, nor could he, given that the SJ Court had jurisdiction over the underlying criminal case. See N.Y. Crim. Proc. Law §§ 10.30(1)-(2) (local criminal courts possess jurisdiction over all offenses other than felonies).  Accordingly, Plaintiff's claims against Justice Wilson are barred by absolute judicial immunity compelling their DISMISSAL pursuant to 28 U.S.C. § 1915(e)(2)(B). See also Mills v. Fischer, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

### 3. Claims Against the Police Department

Plaintiff's claims against the Police Department are implausible because it is an administrative arm of the Town of Southampton and thus lacks the capacity to be sued as a separate entity.  See, e.g., Ayers v. Suffolk County Dist. Attorney Office Inc., No. 20-CV-1192, 2020 WL 6363898, at *3 (E.D.N.Y. Oct. 28, 2020) (dismissing claims against the Southampton Town Police

Department because, as "an arm of the Southampton Town government",
it "cannot sue or be sued") (citing Southampton Town Code §§ 19-
1, 19-3; Arum v. Miller, 331 F. Supp. 2d 99, 107 (E.D.N.Y. 2004)
("[U]nder New York law, a town police department is not a suable
entity." (citation omitted)); Kiernan v. Town of Southampton, No.
14-CV-1831, 2015 WL 1258309, at *10 (E.D.N.Y. Mar. 17, 2015)).

    4. Purported Claims Against the Town of Southampton

Given Plaintiff's pro se status and affording his
Complaint a liberal construction, the Court has considered whether
Plaintiff has alleged a plausible Section 1983 claim against the
municipality, the Town of Southampton, and finds that he has not
for the reasons that follow.

It is well-established that a municipality such as
Southampton cannot be held liable under § 1983 on a respondeat
superior theory. See Monell v. Dep't of Soc. Servs. of N.Y. City,
436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978); Agosto v. N.Y.C.
Dep't of Educ., 982 F.3d 86, 98 (2d Cir. 2020) ("Monell expressly
prohibits respondeat superior liability for
municipalities.")(citing Monell, 436 U.S. at 691; Roe v. City of
Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (additional citation
omitted)); Ayers, 2020 WL 6363898, *3. To prevail on a Section
1983 claim against a municipality, a plaintiff must show "that
'action pursuant to official municipal policy' caused the alleged

constitutional injury." Cash v. County of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Connick v. Thompson, 563 U.S. 51, 60, 131 S. Ct. 1350, 1359 (2011)); see also Monell, 436 U.S. at 690-91. "[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 436 U.S. at 690-91 (internal citation omitted); City of St. Louis v. Praprotnik, 485 U.S. 112, 122, 108 S. Ct. 915 (1988) (plurality opinion) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

"The elements of a Monell claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." Agosto, 982 F.3d at 97. To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality, see Connick, 563 U.S. at 60-61; (2) actions taken or decisions made by municipal policymaking officials, i.e., officials with final decisionmaking authority, which caused the alleged violation of the plaintiff's civil rights, see Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 126 (2d Cir. 2004); Jeffes v. Barnes, 208 F.3d 49, 57 (2d

Cir. 2000); (3) a practice "so persistent and widespread as to practically have the force of law," Connick, 563 U. S. at 61; see also Green v. City of N.Y., 465 F.3d 65, 80 (2d Cir. 2006), or that "was so manifest as to imply the constructive acquiescence of senior policy-making officials," Patterson v. County of Oneida, N.Y., 375 F.3d 206, 226 (2d Cir. 2004) (internal quotation marks and citations omitted); or (4) that "a policymaking official exhibit[ed] deliberate indifference to constitutional deprivations caused by subordinates." Cash, 654 F.3d at 334 (internal quotation marks and citations omitted); see also Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 439 (2d Cir. 2009) (holding a municipal custom may be found "when 'faced with a pattern of misconduct, [the municipality] does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions'") (quoting Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007) (second alteration in original)).

Here, even affording the SAC a liberal construction, Plaintiff has not alleged that the challenged conduct was taken pursuant to a municipal policy or custom. (See SAC, generally.) Nor are there any factual allegations from which the Court could reasonably construe a plausible Section 1983 cause of action against the Town of Southampton.

5. <u>Claims Against Powers</u>

Plaintiff also seeks to impose Section 1983 liability on his court-appointed defense attorney, Powers, in the underlying state court criminal case.  However, court-appointed "attorneys are generally not 'state actors' for purposes of § 1983." <u>O'Donoghue v. U.S. Soc. Sec. Admin.</u>, 828 F. App'x 784, 787 (2d Cir. 2020) (citing <u>Rodriguez v. Weprin</u>, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act under color of state law and therefore are not subject to suit under 42 U.S.C. § 1983.")); <u>see also</u> <u>Pappas v. Lorintz</u>, No. 19-3103, ___ F. App'x ___, 2020 WL 6066083, at *3 (2d Cir. Oct. 15, 2020) (affirming dismissal of constitutional claims against a private lawyer because lawyer was not a state actor, not acting under color of state law, and not subject to a § 1983 claim) (citing <u>McGugan v. Aldana-Bernier</u>, 752 F.3d 224, 229 (2d Cir. 2014)).  Accordingly, because Powers is not a state actor, Plaintiff's Section 1983 claims against her are not plausible, compelling their DISMISSAL pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

6. <u>Claims Against Officer Lawston and the John/Jane Does</u>

Plaintiff complains that Officer Lawston, Jane Doe, and John Doe 2 denied his requests to use the restroom while Plaintiff

was awaiting his arraignment at the SJ Court.   (See SAC at 6-8.)
After repeated requests, Officer Lawston allegedly said Plaintiff
could use the restroom and, as Plaintiff proceeded to do so, he
was "pulled by Lawston" and not permitted to use the restroom.
(Id. at 7.)   Instead, Plaintiff was accused of trying to escape.
(See id. at 7-8.)   Plaintiff protested by jumping on top of the
seating arrangement and refusing to come down until he was
permitted to use the restroom.   (See id.)   He eventually "gave up
the protest but would not sit."   (Id.)   Jane Doe is alleged to
have pointed a taser at Plaintiff, threatening to use it on him.
(See id. at 8.)   Plaintiff also describes that a John Doe Defendant
and Officer Lawston used "unnecessary roughness" by twisting his
arm and digging a knee into his back.   (See id.)   Although
Plaintiff alleges that he was in "pain", he does not claim any
injuries other than "mental damages" and "depression".   (Id. at
8, 11.)

        "Courts in this district have consistently found that
the temporary deprivation of the right to use the toilet, absent
serious physical harm or serious risk of contamination, does not
rise to the level of an objective constitutional violation."
Cooper v. Marrero, No. 11-CV-9260, 2013 WL 2529723, at *4 (S.D.N.Y.
June 11, 2013) (collecting cases: Walker v. Dep't of Corr. Serv.,
No. 11-CV-0993, 2012 WL 527210, at *2 (S.D.N.Y. Feb. 14, 2012) (no

constitutional violation where prisoner was denied right to use bathroom for 80 minutes); Jones v. Marshall, No. 08-CV-0562, 2010 WL 234990, at *3 (S.D.N.Y. Jan. 19, 2010) (same, 90 minutes); Whitted v. Lazerson, No. 96-CV-2746, 1998 WL 259929, at *2 (S.D.N.Y. May 21, 1998) (no constitutional violation where prisoner had to wait 90 minutes to use bathroom and urinated and defecated in his pants); Odom v. Keane, No. 95-CV-9941, 1997 WL 576088, at *4-5 (S.D.N.Y. Sept. 17, 1997) (Sotomayor, J.) (no constitutional violation where plaintiff was deprived of a working toilet for 10 hours, nor where he could not flush his toilet between 9 p.m. and 7 a.m. for a period of several months)). Here, Plaintiff's sparse allegations do not allege a constitutional deprivation regarding his delayed access to the restroom. Indeed, although Plaintiff alleges that his initial requests for restroom access were denied, he expressly alleged that "he did not pee on himself" and does not allege anything more than de minimis discomfort. (SAC at 8 and generally.) Accordingly, Plaintiff has not alleged a plausible Section 1983 claim arising from the alleged delay in restroom access. Such claims are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).

Conversely and though sparsely pled, at this early stage and affording Plaintiff's pro se pleading a liberal interpretation, the Court declines to sua sponte dismiss

Plaintiff's remaining excessive force claims against Officer Lawston and John Doe 1 and John Doe 2.[4]  Accordingly, the Court will order service of the Summonses and the SAC upon Officer Lawston, John Doe 1 and John Doe 2.  Without more information, however, the USMS will not be able to effect service of the Summonses and the SAC on the John Doe Defendants.  Since the Second Circuit has held that district courts must provide pro se litigants with reasonable assistance in investigating the identity of such "John Doe" defendants, see Valentin v. Dinkins, 121 F.3d 72, 75-76 (2d Cir. 1997), the Clerk of the Court will be directed to serve a copy of the SAC, together with this Order, upon the Town Attorney for the Town of Southampton.  Upon said service, the Town Attorney will be directed to attempt to ascertain the full names of the unidentified John Doe Defendants identified in the SAC as allegedly having interacted with Plaintiff at the SJ Court in February 2014.  Thereafter, and within thirty (30) days of the date that this Order is served upon him or her, the Town Attorney will be ordered to provide the Court and Plaintiff with the names and address(es)

---

[4] It is unclear from Plaintiff's submission whether the challenged conduct is attributable to John Doe 1, John Doe 2, or both.  Given Plaintiff's allegations that he was placed face down on the floor while his arm was twisted and a knee was pressed into his back, in an abundance of caution and affording the pro se pleading a liberal construction, the Court declines to sua sponte dismiss Plaintiff's claims against John Doe 1 and John Doe 2.

where the John Doe Defendants can be served.

Once the information regarding the John Doe Defendants is provided to the Court by the Town Attorney, Plaintiff's SAC shall be deemed amended to reflect the full names of these Defendants, a Summons shall be issued as to each Defendant, and the USMS are to serve each of them.  The Town Attorney need not undertake to defend or indemnify these individuals at this juncture.  This Order merely provides a means by which Plaintiff may properly name and serve these Defendants as instructed by the Second Circuit in <u>Valentin</u>.

CONCLUSION

Accordingly and for the reasons articulated herein, **IT IS HEREBY ORDERED** that Plaintiff's:

1. Claims against the SJ Court, Justice Wilson, the Police Department, Powers, and Jane Doe are DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B);

2. Excessive force claims against Officer Lawston, John Doe 1, and John Doe 2 based upon the denial of access to the restroom are DISMISSED; and,

3. Remaining excessive force claims against Officer Lawston, John Doe 1, and John Doe 2 shall proceed;

      **IT IS FURTHER ORDERED** that the Clerk of the Court shall:

4. Issue Summonses and forward such Summonses and the SAC, together with this Memorandum and Order, to the USMS for service;

5. Serve a copy of the SAC, together with this Memorandum and Order, upon the Town Attorney for the Town of Southampton; and

6. Mail a copy of this Memorandum and Order to the <u>pro</u> <u>se</u> Plaintiff at his address of record; and

      **IT IS FURTHER ORDERED** that the Town Attorney:

7. shall attempt to ascertain the full names of the unidentified Defendants who are identified in the SAC as John Doe 1 and John Doe 2 and who are alleged to have interacted with Plaintiff at the SJ Court in February 2014 as is described in the SAC; and

8. within thirty (30) days of the date that this Memorandum and Order is served upon him or her, shall provide the Court and Plaintiff with the names and address(es) where the John Doe Defendants can be served.


      Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith and therefore <u>in</u> <u>forma</u> <u>pauperis</u> status is DENIED for the purpose

25

of any appeal.  <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

<b>SO ORDERED.</b>

<u>/s/ JOANNA SEYBERT                    </u>
Joanna Seybert, U.S.D.J.


Dated:     January  25  , 2021
           Central Islip, New York

26