UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
ANDREW HARDY-GRAHAM,

                                                   MEMORANDUM & ORDER
                        Plaintiff,                 20-CV-0981(JS)(SIL)

            -against-

OFFICER KEITH LAWSTON, OFFICER JOHN
DOE 1, JOHN DOE 2,

                        Defendants.
-----------------------------------X
APPEARANCES
For Plaintiff:       Andrew Hardy-Graham, Pro Se
                     836 Davis Avenue
                     Uniondale, New York 11553

For Defendants:      David H. Arntsen, Esq.
                     Volz & Vigliotta, PLLC
                     280 Smithtown Boulevard
                     Nesconset, New York 11767

SEYBERT, District Judge:

        Pending before the Court is the unopposed motion to

dismiss (hereafter, "Dismissal Motion") of Defendants Officer

Keith Lawston ("Officer Lawston"), and John Does 1 and 2 (the "John

Doe Defendants" and, collectively, "Defendants")[1] seeking to

_____

[1] Officer Lawston's counsel, David H. Arntsen, notes that although
the John Doe Defendants have not been served, they have appeared
in this action through his office "'solely for the purpose of
receiving ECF alerts from the Eastern District Court. . . . .'"
(Support Memo, ECF No. 25-7, at 1 n.1 (quoting Arntsen's Notice of
Appearance, ECF No. 15).)  Arguing that any claims against the
John Doe Defendants "would be subject to dismissal for the same
reasons that the claims insofar as they are asserted against
[Officer] Lawston should be dismissed," Counsel Arntsen requests
that if the Dismissal Motion is granted that the dismissal be of
the case in its entirety, i.e., that the claims against the John
Doe Defendants also be dismissed.  (see id.; see also Arntsen

dismiss the Second Amended Complaint ("SAC") (see ECF No. 9) filed by pro se plaintiff Andrew Hardy-Graham ("Plaintiff"). (See Dismissal Motion, ECF No. 25.)  For the reasons set forth below, Defendants' Dismissal Motion, brought pursuant to Federal Rule of Civil Procedure 12(b)(6), is GRANTED.

BACKGROUND

I.   Procedural History

On February 21, 2020, Plaintiff filed a pro se Complaint against the Southampton Town Police Department ("the Police Department"), the Southampton Town Court, Officer Lawston, and three unidentified officers (i.e., the John Doe Defendants and a "Jane Does"), together with an application to proceed in forma pauperis ("IFP").  (Compl., ECF No. 1; IFP App., ECF No. 2.)  By Order dated April 10, 2020, Plaintiff's IFP application was denied without prejudice and with leave to renew using the court's long-form IFP application.  (See ECF No. 5.)  On April 27, 2020, Plaintiff filed a renewed, long-form IFP application (hereafter, the "Renewed IFP Application"), together with an amended complaint against Officer Lawston, Southampton Justice Court ("SJ Court"), the Police Department, SJ Court Justice Barbara Wilson ("Justice

---

Decl., ECF No. 25-1, ¶ 1 ("I submit this declaration in support of defendants' motion to dismiss the plaintiff's Second Amended Complaint in its entirety as against defendants LAWSTON, DOE and DOE 2.").)

Wilson"), John Doe and Jane Doe.  (Renewed IFP App., ECF No. 6; Am. Compl., ECF No. 7.)

By Memorandum and Order dated May 15, 2020 (hereafter, the "2020 M&O"), the Court accepted and granted the Renewed IFP Application and sua sponte dismissed the amended complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and Federal Rule of Civil Procedure 8.  (See 2020 M&O, ECF No. 8.)  Plaintiff was granted leave to file a second amended complaint and, on June 15, 2020, he did so.  (See SAC, ECF No. 9.)  The SAC named the same defendants as Plaintiff's amended complaint and added Eileen Powers (Plaintiff's court-appointed defense attorney in the underlying criminal case ("Powers")) and another John Doe ("John Doe 2").  The SAC, brought pursuant to 42 U.S.C. § 1983, alleged deprivation of Plaintiff's Sixth, Eighth, and Fourteenth Amendment rights, as well as several sections under the United States Code, including 18 U.S.C. §§ 1510, 1512, and 1519.  (See SAC, ¶ II.A.)

Because Plaintiff largely complained of events alleged to have occurred in 2014, the Court ordered Plaintiff to show cause (hereafter, "OSC") why his claims arising from events alleged to have occurred during February 2014 were not barred by the applicable statute of limitations.  (See OSC, ECF No. 10.)  On September 21, 2020, Plaintiff filed an unsigned response to the OSC (hereafter, the "Response") that barely addressed the timeliness of his claims.  (See Response, ECF No. 11.)  Rather,

Plaintiff largely argued the merits of his claims. (See id., generally.) However, therein, Plaintiff alleged that his attorney reached a plea agreement on June 20, 2014 which resulted in a six-month period of incarceration. (See id. at 9, ¶ 21.) He also alleged that "[i]n the Autumn of 2014", he had no where to live following his release from incarceration, and "became an addict of drugs and alcohol." (Id. at 10, ¶ 24.)

In an abundance of caution and in light of Plaintiff's pro se status, the Court issued another Order to Show Cause whereby Plaintiff was "afforded a final opportunity to properly respond . . . in writing, by October 30, 2020, why his Section 1983 claims are not barred by the applicable three-year statute of limitations" (hereafter, the "Electronic OSC"). (Sept. 25, 2020 Elec. OSC.) In compliance, Plaintiff filed a response (hereafter, the "Reply"). (See ECF No. 12.)

Plaintiff's Electronic OSC Reply addressed the merits of his claims as well as the reason for his delay in filing a Complaint. (See Reply, generally.) Without providing any dates when these events allegedly occurred, Plaintiff reported that his "untimely filing was caused by Suffolk County jail conditions and the circumstances of my confinement. As a direct result, he "focused on priorities concerning homelessness, addiction and recovery, [and] other immediate needs." (Id. at 2.) More specifically, Plaintiff described that "Suffolk County jails did

not allow complaints and used fear to keep inmates from trying to complain of treatment." (Id. at 2, ¶ 1.)  Plaintiff also reported that his "appeal paperwork was damages in Suffolk County jail transfers and cell tossing." (Id. at 2, ¶ 2.)  Plaintiff continued his explanation, stating that once he was released from incarceration, he was "kicked out of the house by my mother" and "lost personal items and release paperwork." (Id. at 3, ¶ 3.) Plaintiff contended that he "prioritized shelter," presumably over filing a complaint, and asserted that he spent his days applying for Medicaid, SNAP[2] benefits, and employment so that he would be eligible "to keep benefits." (Id. at 3, ¶ 4.)  Plaintiff described using the computers at the public library for these tasks and acknowledged that he "wasted a lot of time keeping up appearances." (Id. at 3, ¶ 6.)  In addition, Plaintiff asserted that his "best friend was murdered soon after and I drank more losing faith." (Id. at 4, ¶ 8.)  As a result, Plaintiff was "mandated to [a] minimum of a year in rehabilitation. . . ." (Id. at 4, ¶ 8.) Plaintiff explained that he began working "two full time temp jobs and attended outpatient services", which was across the street from the Brooklyn courthouse and library. (Id. at 4, 11.)  He further claimed that in 2019 he was "advised about pro se services"

---

[2] "SNAP" is the acronym for the "Supplemental Nutrition Assistance Program," the largest federal nutrition assistance program, which provides benefits to eligible low-income individuals and families. See, e.g., http://www.benefits.gov/benefit/361.

but, did not pursue filing a complaint because "homelessness was imminent again." (Id.)  He did, however, "speak with lawyers anyway but didn't find a lawyer willing to start a case." (Id.) Plaintiff then stated that he: (1) attended his Alcoholics Anonymous and Narcotics Anonymous meetings; (2) ran a half marathon; (3) hunted for an apartment; (4) moved to an apartment in Orange County; and (5) began working in a warehouse. (See id. at 5, ¶ 13.)  Plaintiff "recovered some stability" and "worked for a year," but was then "injured in a car accident". (Id. at 5, ¶ 14a-14b.)  While researching lawyers to assist him with a wrongful termination claim, Plaintiff alleged he decided to try to file on his own. (Id. at 5, ¶ 14b.) Until then, Plaintiff claimed he "believed [he] couldn't file without a lawyer" and that he "didn't know there was a time limit" for this case. (Id. at 4-5, ¶ 12.)

By Memorandum and Order dated January 25, 2021 (hereafter, the "2021 M&O") (see ECF No. 13), the Court determined, inter alia, that, given the early stage in the proceedings, Plaintiff, "though barely", had demonstrated that he acted with reasonable diligence during the time period he sought to be tolled and that his circumstances were so extraordinary that the equitable tolling doctrine applied. (2021 M&O at 3 (citing Zerilli-Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003) (internal citations and quotation marks omitted)).)  Specifically, the Court found that Plaintiff's claim that his untimely filing

was a result of: (1) the conditions of his confinement at the Suffolk County Correctional Facility; (2) his homelessness; and (3) his addiction and recovery efforts, was sufficient to survive sua sponte dismissal. (Id. at 3-4 (citing Reply, generally, and at 2-3).)  However, the Court made clear that "this finding is without prejudice to the further adjudication of the timeliness of Plaintiff's claims should the Defendants raise the statute of limitations as an affirmative defense." (Id. at 4, n. 1.)

The Court also considered the merits of Plaintiff's claims as set forth in the SAC in accordance with the screening provision of 28 U.S.C. § 1915(e)(2)(B).  Because Plaintiff sought to pursue claims for relief pursuant to criminal statutes (18 U.S.C. §§ 1510, 1512, and 1519 (see SAC, ¶II.A.) that proscribe the obstruction of justice and do not provide for a private right of action, the Court dismissed those claims with prejudice. (See 2021 M&O at 10-12.)  Similarly, the Court dismissed Plaintiff's claims brought pursuant to 28 U.S.C §§ 455, 1332, 1343, 1361, and 1491; "C.P.L.P 213"; "Prisoner Reform Laws"; and "466 U.S. 668" because each of these statutes govern procedure in the federal district courts and none of them provide a separate claim for relief. (Id.)

With regard to Plaintiff's remaining Section 1983 claims, pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court dismissed those claims with prejudice as against the Town Court, Justice

Wilson, the Police Department, the Town, and Powers.  (See 2021 M&O at 12-20.)  Further, Plaintiff's remaining Section 1983 claims against Officer Lawston and the John/Jane Does relating to the alleged delay in restroom access were dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(ii).  (Id. at 20-22.) Finally, Plaintiff's Section 1983 excessive force claims against Officer Lawston and the John Doe Defendants, "though sparsely pled, at this early stage and affording Plaintiff's pro se pleading a liberal interpretation" survived sua sponte dismissal.  (Id. at 22-23.)

Accordingly, the Court ordered service of the SAC upon Officer Lawston and the John Doe Defendants.  (See 2021 M&O at 23.)  Given that service upon the unnamed defendants could not be effected without more information, the Clerk of the Court was ordered to serve a copy of the SAC, together with the 2021 M&O, upon the Town Attorney for the Town of Southampton who was requested to attempt to ascertain their identities.  (Id.)  By letter dated March 3, 2021, the attorney representing Officer Lawston apprised the Court that, after investigation, the Town has determined that "only Officer Lawston interacted with [P]laintiff during the actions complained of in the [SAC]."  (ECF No. 16.) The letter also provided that: "Town's investigation continues, and should additional information be made available, the Town shall supplement this letter accordingly."  (Id.)  To date, no further

information has been provided to the Court concerning the identities of these defendants.

Shortly thereafter, Officer Lawston filed a letter seeking a pre-motion conference (hereafter, the "PMC Letter") in anticipation of moving to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (See PMC Letter, ECF No. 19.) Plaintiff did not respond to the PMC Letter. (See Case Docket, in toto.) Accordingly, the Court waived the conference requirement and set a briefing schedule. (See May 3, 2021 Elec. Order.) The PMC Letter the May 3 Order were served on Plaintiff at his address of record and were not returned to the Court as undeliverable. (See Affs. of Serv., ECF Nos. 20, 21; Case Docket, in toto.) By letter motion dated May 25, 2021, Officer Lawston requested an extension of time to file the Motion to Dismiss. (See May 25, 2021 Ltr. Mot., ECF No. 22.) Plaintiff did not respond to that letter motion either, despite it being served upon him at his address of record. (See Aff. of Serv., ECF No. 23; Case Docket, in toto.) By Electronic Order dated June 1, 2021 ("the June Electronic Order"), the Court granted Officer Lawston's letter motion and modified the briefing schedule as follows: (1) by June 18, 2021, Officer Lawston was to serve and file his dismissal motion; (2) by July 23, 2021, Plaintiff was to serve and file his response; and (3) by August 6, 2021, Officer Lawston was to serve and file his reply, if any. (See June 1, 2021 Elec. Order.) The

June Electronic Order was also served on Plaintiff at his address of record and has not been returned to the Court.  (<u>See</u> Aff. of Serv., ECF No. 24; Case Docket, <u>in toto</u>.)  On June 18, 2021, Officer Lawston timely filed his Dismissal Motion.  (<u>See</u> ECF No. 25.)  To date, Plaintiff has not filed a response to the Dismissal Motion; nor has he otherwise communicated with the Court about this case.  (<u>See</u> Case Docket, <u>in toto</u>.)

II.  <u>Relevant Facts</u>[3]

The Court sets forth only those facts relevant to the instant Dismissal Motion, and reiterates that after the Court's 2021 M&O, only Plaintiff's Section 1983 excessive force claims against Officer Lawston and the John Doe Defendants remain.[4]

In February 2014, Plaintiff was arrested after breaking the windshield of his then-girlfriend's car.  (<u>See</u> SAC at 6.)  Plaintiff was taken by Southampton Town police to the SJ Court for arraignment on criminal mischief charges.  (<u>See</u> <u>id.</u>)  While awaiting arraignment, Plaintiff alleges that his multiple requests to use the restroom were denied and so he "jump[ed] on top of the seating arrangement . . . protesting . . . [that he] will not sit

_____

[3] The following facts are drawn from the SAC.

[4] As set forth above, <u>supra</u> at 8, all claims arising from any delay in restroom access have been dismissed.  The Court includes reference to the facts underlying those claims to provide the sequence of events as related to the remaining excessive force claims.

until he goes to the bathroom or until Defendant Keith Lawston attempts to trip (Pl[aintiff]) from 3 feet above ground where (Pl[aintiff]) protested." (Id.) Plaintiff describes that he "gave up the protest but did not sit" and instead "lung[ed] for the bathroom" when Officer Lawston "put[] an elbow to [Plaintiff's] throat." (Id.) Officer Lawston allegedly "trips both parties" and "propel[led] [Plaintiff] towards the exit, not the restroom." (Id.)

Plaintiff asserts that John Doe entered and, after consultation with Officer Lawston, accused Plaintiff of "multiple charges" including attempted escape and assaulting an officer. (Id.) Plaintiff also claims that John Doe "ignored" his request to use the restroom and, instead, restrained Plaintiff. (Id. at 7-8.) Plaintiff contends that, thereafter, he was placed face-down on the floor, with an unknown officer twisting Plaintiff's arm until it hurt and digging his knee into Plaintiff's back. (See id. at 8.) Plaintiff alleges that Jane Doe then pointed a taser at him and threatened to taser him because he was yelling and kicking. (See id.) Plaintiff was then taken back to the Police Department until the following day when he was returned to the SJ Court for arraignment. (See id.) As a result of the foregoing, Plaintiff claims to have suffered "monetary and mental damages" for which he seeks to recover a damages award in the total sum of $1 million. (SAC, ¶II.B(3), ¶IV.)

III. <u>Defendants' Dismissal Motion</u>

The Defendants' Dismissal Motion seeks dismissal of the SAC in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  (<u>See</u> Dismissal Motion.)  More specifically, Defendants argue that Plaintiff's claims: (1) are barred by the applicable statute of limitations and that equitable tolling does not save them; (2) of excessive force fail to state a claim; and (3) are subject to dismissal because the Defendants are shielded from liability by qualified immunity.  (<u>See</u> Support Memo, ECF No. 25-7, at 10-18.)  Plaintiff has not opposed the Dismissal Motion.

<u>LEGAL STANDARDS</u>

I.   <u>Rule 12(b)(6)</u>

To withstand a motion to dismiss, a complaint must contain factual allegations that "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (internal quotation marks and citation omitted).  Although the Court must accept all allegations in the complaints as true, this tenet is "inapplicable to legal conclusions." <u>Id.</u>  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." Id. (citation omitted). Ultimately, the Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

A complaint filed by a pro se litigant is to be construed liberally and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). Nevertheless, a pro se complaint must state a plausible claim for relief and comply with the minimal pleading standards set forth in Federal Rule of Civil Procedure 8. See, e.g., Nielsen v. Rabin, 746 F.3d 58, 63 (2d Cir. 2014).

When, as here, a motion to dismiss is unopposed, the failure to oppose does not, by itself, justify dismissal. McCall v. Pataki, 232 F.3d 321, 322–23 (2d Cir. 2000). "[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." Goldberg v. Danaher, 599 F.3d 181, 84 (2d Cir. 2010) (citation omitted); Bloom v. Fischer, 840 F. Supp. 2d 691, 692 (W.D.N.Y. 2012) ("Plaintiff's failure to oppose the motion to dismiss does not relieve the Court of its obligation to consider the merits of plaintiff's claims."). Finally, "a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." Thea v.

Kleinhandler, 807 F.3d 492, 501 (2d Cir. 2015).  However, before a complaint may be dismissed on statute-of-limitations grounds, the plaintiff should have notice and an opportunity to be heard with respect to any argument for tolling.  Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 1997).

DISCUSSION

I.   Statute of Limitations Under New York Law

Under New York law, Section 1983 claims are governed by a three-year statute of limitations.  See Owens v. Okure, 488 U.S. 235, 250-51 (1989) (holding that New York's three-year statute of limitations for general personal injury actions is applicable to § 1983 actions filed in federal courts in New York); Milan v. Wertheimer, 808 F.3d 961, 963 (2d Cir. 2015) ("Section 1983 actions in New York are subject to a three-year statute of limitations, running from the time a plaintiff knows or has reason to know of the injury giving rise to the claim.") (cleaned up); Camacho v. Nassau Boces Sch. Dist., 21-CV-1523, 2022 WL 256506, *3 (E.D.N.Y. Jan. 27, 2022) (applying New York's three-year statute of limitations to Section 1983 claims).  Here, Plaintiff commenced this action on February 21, 2020 alleging Section 1983 claims arising from conduct alleged to have occurred in 2014.  Thus, such claims are well outside the three-year statute of limitations.

However, a statute of limitations may be extended under the doctrine of equitable tolling and is "permitted where a

plaintiff can show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Jamieson v. United States Postal Serv., No. 20-CV-06184, 2022 WL 43767, at *2 (E.D.N.Y. Jan. 5, 2022) (quoting Holland v. Florida, 560 U.S. 631, 649 (2010)); see also Watson v. United States, 865 F.3d 123, 132 (2d Cir. 2017). "[T]he term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." Watson, 865 F.3d at 132 (quoting Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011)). In this regard, the Second Circuit instructs "it is not enough for a party to show that he experienced extraordinary circumstances. He must further demonstrate that those circumstances caused him to miss the original filing deadline." Watson, 865 F.3d at 132 (emphasis in original) (cleaned up). Plaintiff bears the burden to establish that equitable tolling is warranted. See Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000) (The "burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff.") (citation omitted).

"Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would defeat the goals of section 1983." Abbas v. Dixon, 480 F.3d 636, 641 (2d Cir. 1997) (internal quotation marks and citation

omitted); <u>Berrios v. Henri</u>, No. 18-CV-4194, 2021 WL 6197052, at *3
(E.D.N.Y. Dec. 30, 2021) ("In § 1983 actions filed in New York,
'federal courts [are] obligated not only to apply the analogous
New York statute of limitations to . . . federal constitutional
claims, but also to apply the New York rule for tolling that
statute of limitations.'" (citing <u>Leon v. Murphy</u>, 988 F.2d 303,
310 (2d Cir. 1993) (additional citation omitted)).

Under New York law, equitable tolling is an
"extraordinary remedy" that is available only when a plaintiff can
demonstrate that he acted diligently and commenced the action
"within a reasonable time after the facts giving rise to the
estoppel have ceased to be operational." <u>Doe v. Holy See (State
of Vatican City)</u>, 17 A.D.3d 793, 796, 793 N.Y.S.2d 565, 569 (A.D.3d
2005) (citing <u>Simcuski v. Saeli</u>, 44 N.Y.2d 442, 450, 406 N.Y.S.2d
259, 377 N.E.2d 713 (1978) (internal quotation marks and additional
citation omitted)); <u>see also</u> <u>Pulver v. Dougherty</u>, 58 A.D.3d 978,
871 N.Y.S.2d 495, 497 (2009) (equitable estoppel is an
"extraordinary remedy").   Equitable estoppel "estops the
defendant/wrongdoer who has taken 'affirmative steps to prevent a
plaintiff from bringing a claim' within the limitations period
from arguing that the plaintiff is at fault and should be precluded
from bringing a claim for failure to bring it within that
limitations period." <u>Roeder v. J.P. Morgan Chase & Co.</u>, No. 20-
CV-2400, 2021 WL 797807 (S.D.N.Y. Feb. 26, 2021), <u>aff'd</u>, No. 21-

552, 2022 WL 211702 (2d Cir. Jan. 25, 2022) (quoting Zumpano v. Quinn, 6 N.Y.3d 666, 816 N.Y.S.2d 703, 849 N.E.2d 926, 929 (2006); see also Bennett v. U.S. Lines, Inc., 64 F.3d 62, 66 (2d Cir. 1995) ("[E]quitable tolling prevents the running of a statute of limitations against a plaintiff who is unaware that he has a cause of action because of defendant's fraudulent acts or concealment.") (emphasis added); Putter v. N. Shore Univ. Hosp., 7 N.Y.3d 548, 825 N.Y.S.2d 435, 858 N.E.2d 1140, 1142 (2006) ("[E]quitable estoppel . . . preclude[s] a defendant from using the statute of limitations as a defense where it is the defendant's affirmative wrongdoing which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding." (emphasis added) (internal quotation marks and citation omitted)). Indeed, "New York tolls the statute of limitations both (i) where the defendant conceals from the plaintiff the fact that he has a cause of action, and (ii) where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired." Camacho, 2022 WL 256506, at *7 (emphasis added) (internal quotation marks and citation omitted).  Neither of these circumstances apply here.

Plaintiff's reply to the OSC makes clear that none of the Defendants "concealed" the fact that he had a cause of action or "induced" him to forego suit until after the statutory period had expired.  To be sure, Plaintiff asserts that his "untimely

filing was caused by Suffolk County jail conditions and the circumstances of my confinement." (Reply, ECF No. 12, at 2.) And, once released from incarceration, he reported that he, instead, "focused on priorities concerning homelessness, addiction and recovery, [and] other immediate needs." (Id.) Given the absence of any allegations that the Defendants took any affirmative steps to prevent Plaintiff from timely filing suit, equitable estoppel does not apply. See Willensky v. Lederman, 13-CV-7026, 2015 WL 327843, *6 (S.D.N.Y. Jan. 23, 2015) (finding equitable estoppel inapplicable and explaining that the doctrine "applies where it would be unjust to allow a defendant to assert a statute of limitations defense, because the defendant's affirmative wrongdoing . . . produced the long delay between the accrual of the cause of action and the institution of the legal proceeding" (cleaned up) (emphasis added)).

Moreover, Plaintiff has not sufficiently demonstrated that he has been pursuing his rights "diligently." Indeed, Plaintiff acknowledges that, after his release "in Autumn 2014" (Response, ECF No. 11, at 10, ¶ 24), he participated in many different activities, yet did not pursue his claims. Specifically, Plaintiff ran a half marathon, attended Alcoholics Anonymous and Narcotics Anonymous meetings, moved to an apartment in Orange County, and began working in a warehouse; however, he did not file a complaint. (See Reply at 5, ¶ 13.) Further, although Plaintiff

had access to computers at the public library, which he used to apply for SNAP benefits, Medicaid, and employment, he did not pursue his claims. (Id. at 3, ¶¶ 4, 6.)

While sympathetic to Plaintiff's circumstances, he has not adequately demonstrated a basis to equitably toll the statute of limitations. See, e.g., Watson v. United States, 865 F.3d 123, 133 (2d Cir. 2017) ("[W]e cannot justify the grant of equitable tolling to Watson on the ground that he was (however understandably) focused on avoiding deportation before filing his claim for administrative damages. Watson's depression cannot justify equitable tolling for similar reasons. Depression did not prevent him from contesting his citizenship before the immigration judge, so it could not have prevented him from filing his administrative claim for damages. Nor can equitable tolling be premised on Watson's lack of education, pro se status, or ignorance of the right to bring a claim.") (citing Menominee Indian Tribe v. United States, 577 U.S. 250 (2016) (tribe's mistake of law did not constitute extraordinary circumstance sufficient to justify equitable tolling)); cf. Smith v. McGinnis, 208 F.3d 13, 18 (2d Cir. 2000) (habeas petitioner's "pro se status . . . does not merit equitable tolling"). Indeed, "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." Wallace v. Kato, 549 U.S. 384, 396 (2007).

Further, Plaintiff had an opportunity to make any further argument supporting equitable tolling by opposing the motion to dismiss, but he forfeited that opportunity by failing to respond. Mobley v. Crane, No. 21-CV-0299, 2021 WL 5813689, at *1 (N.D.N.Y. Nov. 3, 2021), report and recommendation adopted, 2021 WL 5810406 (N.D.N.Y. Dec. 7, 2021). Thus, upon the record of this case, equitable tolling is not warranted. Accordingly, finding Plaintiff's claims are untimely, the Court GRANTS Defendants' Dismissal Motion pursuant to Federal Rule of Civil Procedure 12(b)(6).[5]

## II. Leave to Amend

The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). In addition, leave to replead should be liberally granted to pro se litigants. See Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). However, leave to amend is not required where it would be futile. See, e.g., Madison Asset LLC v. Deutsche Bank, AG, No. 20-CV-10299, 2021 WL 1894032 (S.D.N.Y. May 11, 2021) (stating leave

---

[5] Finding Plaintiff's Section 1983 claims untimely, the Court need not address Defendants' other arguments in support of their Dismissal Motion.

to amend should be freely given absent, among other things, futility of amendment) (quoting <u>Foman v. Davis</u>, 317 U.S. 178, 182 (1962)).  Here, given that Plaintiff's excessive force claims are well outside of the application statute of limitations, a further opportunity to replead such claims would be futile.  Accordingly, LEAVE TO AMEND IS DENIED.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' Dismissal Motion (ECF No. 25) is GRANTED as Plaintiff's Section 1983 claims are barred by the statute of limitations; thus, Plaintiff's SAC is dismissed in its entirety.  The Clerk of the Court is directed to: (1) enter Judgment in the Defendants' favor; (2) close the case; and (3) mail a copy of this Order to the <u>pro se</u> Plaintiff.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith; therefore, <u>in forma pauperis</u> status is DENIED for the purpose of any appeal.  <u>See Coppedge v. United States</u>, 369 U.S. 438, 444-45(1962).

SO ORDERED.

/s/JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February  4  , 2022
       Central Islip, New York